IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUALITY IP HOLDINGS, LLC, a Nevada limited liability company,<br><br>             Plaintiff,<br><br>vs.<br><br>SYNERGY ENDEAVORS LTD., INC., a Delaware corporation,<br><br>             Defendant. | Civil Action No. |

COMES NOW Plaintiff Quality IP Holdings, LLC ("Plaintiff"), by and through their

undersigned attorneys, and complains of Defendant Synergy Endeavors Ltd., Inc. ("Defendant")

as follows:

## **INTRODUCTION**

Plaintiff QUALITY IP HOLDINGS, LLC ("Plaintiff") is engaged in the business of

acquiring and holding intellectual property rights, which it licenses to third party entities

primarily for the manufacturing, marketing, selling, and distributing of dietary supplements and

other health and fitness products throughout the United States.

For years, various Sensa trademarks were used in the advertisement and sale of at least

four products (each bearing respective trademarks of the same name): Sensa, Sensa Quench,

Sensa Weight Loss System, and Sensa Chews.  These products were marketed as dietary

supplements that could assist the consumer in losing weight.  But the products lacked adequate

scientific substantiation to make these claims.  The advertising and packaging for these products

thus contained, among other legal violations, false advertising.

After becoming aware of false advertising and other problems surrounding use of the

Sensa mark in conjunction with these products, the FTC brought an action against four

defendants: Sensa Products, LLC, Sensa, Inc., Adam Goldenberg, and Dr. Alan R. Hirsch ("FTC

Action Defendants").  The action sought "permanent injunctive relief, rescission or reformation

of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief" for the misuse of the Sensa mark in connection with these products.  The FTC

Action Defendants consented to an order prohibiting the further sale of these and similar

products without adequate scientific substantiation.

The original owners of the Sensa mark, under court order to no longer use the Sensa mark

in connection with its weight loss products, went out of business.  The PTO declared the Sensa-

related marks abandoned as of June 11, 2015.

Three months later, Plaintiff acquired the rights to use the Sensa trademark.  It filed an

application to register the mark, on an intent-to-use basis, on the federal register on September

22, 2015.  Plaintiff first used the Sensa® mark in May of 2017.  Plaintiff intended to use, and is

now using, the Sensa® mark in connection with its own weight-loss products.  Unlike the FTC

Action Defendants , however, Plaintiff is properly using the mark because Plaintiff has extensive

scientific substantiation for the claims that it makes for its Sensa®-bearing products, which are a

completely different formulation than the original unsubstantiated Sensa products.

Plaintiff was surprised to learn that the Defendant in this matter, on June 29, 2017, filed

an application to register four Sensa-related marks—the same four marks at issue in the FTC

litigation and the same four marks that were found to be abandoned in 2015.  In its filing, Defendant claims that it has been using the marks since before the initiation of the FTC lawsuit.  Curiously, the products with which it has purportedly been using the Sensa marks are the same products that the court, in the FTC lawsuit, prohibited to be sold absent adequate scientific substantiation.  But Defendant's products, by its own admission, bear the exact same claims and ingredients that led to the FTC lawsuit in the first place.  Plaintiff is unaware whether Defendant is related in some way to the FTC Action Defendants, a successor in interest trying to liquidate remaining product, or a counterfeiter of some sort.  Regardless, under any of these scenarios, Defendant is violating federal and state law.

Plaintiff should be awarded statutory damages for each instance of false advertising in which Defendant has engaged and should be awarded an injunction prohibiting Defendant from continuing to sell the already-declared not-scientifically-based products.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Nevada.  Its principal place of business is located at 5742 West Harold Gatty Drive in Salt Lake City, Utah.

2.      Defendant is, on information and belief, a corporation organized and existing under the laws of Delaware.  On information and belief, Defendant distributes products in certain isolated geographic areas within the United States.

3.      This action arises under 15 U.S.C. § 1125(a).  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act claims).  The Court also has subject matter jurisdiction pursuant to 28 U.S.C.

§ 1332 because there is complete diversity and the amount in controversy exceeds the requisite amount.

4.      This Court has jurisdiction over Defendant, a business organization registered pursuant to the laws of Delaware, for whom John J. Denisi, at 2207 Concord Pike, Wilmington, Delaware 19803, is listed as the Registered Agent..

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

6.      While not currently defendants in the instant action, four other parties, each of whom were defendants in a January 2014 action filed by the FTC (the "FTC Action," a copy of the complaint in that action is attached hereto as **Exhibit A**) are relevant here for a more complete understanding of the facts that underpin Plaintiff's Complaint.

7.      At the time of the filing of the FTC Action, Sensa Products, LLC was a Delaware limited liability company. Sensa Products, LLC transacted business throughout the United States. Acting alone or in concert with others, Sensa Products, LLC labeled, advertised, marketed, distributed, or sold Sensa to consumers throughout the United States.

8.      At the time of the filing of the FTC Action, Sensa, Inc. was a Delaware corporation and was the managing member of Sensa Products, LLC. Acting alone or in concert with others, Sensa, Inc. formulated, directed, controlled, had the authority to control, or participated in the acts and practices at issue in the FTC Order (described below).

9.      At the time of the FTC Action, Adam Goldenberg was the Chief Executive Officer of Sensa, Inc. and a member of its four-member Board of Directors. He was also a member of Sensa Products, LLC's four-member Board of Managers. Until 2012, he was a Co-Chief Executive Officer of Sensa Products, LLC. Acting alone or in concert with others, he

formulated, directed, controlled, had the authority to control, or participated in the acts and practices at issue in the FTC Order.

10.     Dr. Alan R. Hirsch was the creator of Sensa and at the time of the FTC Action owned ten percent of Sensa Products, LLC.  Acting alone or in concert with others, he provided the means and instrumentalities for the acts and practices at issue in the FTC Order.  He also participated in the promotion of Sensa by, among other means, authoring promotional materials and providing endorsements for Sensa in advertisements and promotional materials.

11.     Sensa, Inc. and Sensa Products, LLC shall be jointly referred to herein as the "FTC Action Corporate Defendants."

12.     The FTC Action Corporate Defendants, together with Alan Hirsch and Adam Goldenberg, shall be collectively referred to herein as the "FTC Action Defendants."

## GENERAL ALLEGATIONS

### Original Sensa-Marked Products and Advertisements

13.     On information and belief, and according to the FTC Action Complaint, from at least 2008 to January 2014, the FTC Action Defendants labeled, advertised, marketed, distributed, and sold Sensa, a powdered weight-loss product created and endorsed by FTC Action Defendant Hirsch, to consumers and retailers. FTC Action Defendant Hirsch licensed to one or both of the FTC Action Corporate Defendants the rights to market and sell Sensa to consumers. The FTC Action Defendants advertised Sensa through long-form television commercials ("infomercials"), short-form television commercials, radio spots, magazine ads, freestanding newspaper inserts, online ads, and other advertising and promotional materials. FTC Action Defendants represented, among other things, through express claims and consumer

endorsements, that Sensa causes consumers to lose 30, 40, 90 pounds, and more without dieting

or exercise. Relying on research conducted by Defendant Hirsch and by a purportedly

independent laboratory, FTC Action Defendants have also represented that Sensa is clinically

proven to cause substantial weight loss without dieting or exercise, averaging 30 pounds in six

months.  *See* FTC Action Complaint, a copy of which is attached hereto as **<u>Exhibit A</u>** and is

herein incorporated by reference, ¶ 12.

14.     On or about March 2, 2009, FTC Action Defendant Sensa Products, LLC

registered the SENSA mark with the PTO.  See USPTO Registration Number 3583092, a copy

of which is attached hereto as **<u>Exhibit B</u>** and is incorporated herein by reference.

15.     The FTC Action Defendants sold Sensa directly to consumers for $59.00 plus

shipping and handling for a one-month supply and, if signed up for a continuity plan, $89.95 plus

shipping and handling for a two-month supply. Sales of Sensa in the United States from 2008

through 2012, minus returns, totaled nearly $364 million.

16.     To induce consumers to purchase Sensa, the FTC Action Defendants

disseminated, or caused to be disseminated, advertisements for Sensa, including, but not limited

to, the advertisement samples attached as exhibits to the FTC Action Complaint (attached as

Exhibit A hereto).

17.     Set forth below are various means used and statements made by the FTC Action

Defendants in marketing Sensa.

18.     The following is an excerpt from a Sensa infomercial the FTC Action Defendants

employed:

MICHELLE FERNANDEZ: Everything you've ever heard about dieting is wrong. You don't need to diet to lose weight. There's a better way and you've just found it.

MALE NARRATOR: If you've tried to lose weight, there's something you already know. No matter what diets, programs or products you've tried, they've all had one thing in common, they didn't work. But there's something new that does.

ON SCREEN: [Before and after photos of consumer endorser]

# Amanda **lost 50 pounds!**
Studies show average weight loss 30 lbs. in 180 days.

ON SCREEN: [Before and after photos of consumer endorser]

# Dorothy **lost 64 pounds!**
Studies show average weight loss 30 lbs. in 180 days. Dorothy used Sensa for 9 months with a sensible diet and exercise program.

ON SCREEN: [Before and after photos of consumer endorser]

# David **lost 93 pounds!**
Studies show average weight loss 30 lbs. in 180 days. David used Sensa for 8 months with a sensible diet and exercise program.

MALE NARRATOR [ON SCREEN depictions, including consumer endorsement, omitted]: Right now hundreds of thousands of people are already losing millions of pounds without dieting. They've discovered the most revolutionary weight-loss breakthrough of the 21st century. It's called Sensa, the amazing new clinically proven sensation that you sprinkle on to take the weight off. Whether you need to lose 10 pounds, 50 pounds or more, now you can, without dieting. Simply sprinkle Sensa on, eat all the foods you love, and watch the pounds come off. It's that easy. You'll lose weight faster and easier than you ever dreamed possible.

ON SCREEN: [Before and after photos of consumer endorser]

# Joey **lost 120 pounds!**
Studies show average weight loss 30 lbs. in 180 days. Joey used Sensa for 12 months with a sensible diet and exercise program.

JOEY: I lost over 120 pounds with Sensa.

* * *

MICHELLE FERNANDEZ [ON SCREEN depiction omitted]: So, how does Sensa work? Well, at the heart of the Sensa program is a revolutionary technology that's based on 25 years of research and testing. It was discovered by a brilliant research scientist and my hero, Dr. Alan Hirsch. Dr. Hirsch holds five medical board certifications and is recognized as the world's leading expert on the science of smell and taste. He's appeared on Oprah, Good Morning America, Dateline, Extra, the CBS Early Show, CNN, and in hundreds of magazines and newspapers around the world. During the course of his pioneering research, Dr. Hirsch discovered the ground-breaking secret behind Sensa that has changed the way the world looks at weight loss forever.

DR. ALAN HIRSCH [ON SCREEN depiction omitted]: After 25 years of research, I finally figured out why diets don't work. Most diets focus on what you eat. They have it all wrong. Sensa looks at why you overeat and the biological mechanisms that prevent you from overeating. It uses the body's natural physiology to prevent you from overeating. I've found that hunger isn't controlled by your stomach; it's controlled by your brain. We don't overeat just because we're hungry. It's because we love to eat. And diets don't stop you from wanting to eat, they just stop you from eating what you want. And that's a recipe for failure. The key is a medical phenomena called sensory specific satiety. As you eat, Sensa works with your senses to activate your body's natural control switch and triggers your body into thinking you've eaten more than you have. So, you begin to lose weight without having to think about it. The reason Sensa works when diets don't is because it lets you do what no diet can. It lets you lose weight while still eating the foods you love most without ever feeling hungry or deprived.

* * *

MALE NARRATOR [ON SCREEN depiction omitted]: If this sounds too good to be true, just listen to this. In one of the largest clinical studies ever conducted for a non-pharmaceutical weight-loss product, over 1,400 people were given Sensa and told not to diet and not to change their exercise routine. All they did was sprinkle, eat, and lose weight. And lose weight they did.

ON SCREEN: Over 1400 people!

**SENSA**®

**WEIGHT-LOSS SYSTEM**

**average weight-loss**

**30.5**

**pounds**

Results based on 180 day study period.

MALE NARRATOR [ON SCREEN depiction omitted]: In fact, the average weight loss was an incredible 30 and a half pounds. And in the same study, the group that was not given Sensa lost an average of only two pounds.

*See* FTC Action Complaint, ¶ 14.

19.     The following is from an email advertisement the FTC Action Defendants

employed:

> **. . . Lose More Weight for Less Money "GUARANTEED" With Sensa's FREE Trial!**
>
> Sensa is breaking the mold of high-priced, high-risk weight-loss programs by offering customers the chance to try Sensa for free. We realize that you might be somewhat skeptical, even jaded by a weight-loss industry spread thick with misleading claims, which is why we are offering a free trial. And we back it up with a **30-day weight-loss guarantee**.
>
> ***If you don't lose weight, you owe us nothing for the product.***
>
> It is a huge financial risk to us, but we have good reason to be confident that you will lose weight because Sensa has been tested and **proven effective in multiple clinical studies**. In fact, no other weight-loss product has such amazing clinical results. In one of the largest clinical weight-loss studies ever conducted, **1,436 people lost an average of 30.5 pounds – nearly 15% of their total body weight** in just 6 months. And all they did was sprinkle Sensa on their food. No counting calories, no back-breaking exercise, no boxed meals.

*Id*.

20.     The following is from a radio advertisement the FTC Action Defendants

employed:

> MVO: You already know that going to the gym will get you rock hard abs, ripped arms, and a completely toned body. But what if there was a way you could get all of that without ever stepping foot into a gym again? . . .
>
> Introducing Sensa for Men. Specifically designed for men, by men, to help you shed thirty pounds or more so you can build that beach body in no time. Get started on your six-pack abs today with a free 30 day trial of Sensa. Call 1-800-XXX-XXXX.

Sensa does not require any dieting, pills or change in lifestyle. It's a clinically proven way to lose thirty pounds or more. And because it's created for men, by men, results are guaranteed.

If you want to lose more than THIRTY pounds, call now for your free trial and get those six-pack abs you've always wanted. . . .

*Id*.

21.    The following is from a print advertisement the FTC Action Defendants

employed:

# "Eat Yourself Skinny!"

Mother of 5 reveals how she **lost 58 pounds in 10 months WITHOUT Dieting** . . . and WITHOUT depriving herself of all of her favorite foods – plus it was as easy as shaking 'salt n pepper' on her meals . . .

Based on Dr. Hirsch's 25 years of research and testing, SENSA® works with your sense of smell to trigger the "I feel full" signal in your brain which means you eat less and feel more satisfied . . . ultimately you lose weight. In one of the largest studies ever conducted on a non-prescription weight-loss system, 1,436 men and women lost an average of 30.5 pounds in just 6 months, without changing their diets or exercise routines.

Considering all the science behind SENSA®, I was relieved to see it wasn't another one of those fad diets or quick fixes. I knew I had to try it. After all, the only thing I had to lose was my unwanted weight! . . .

I have been using SENSA® for ten months now, and I've lost 58 pounds*! . . .

[Accompanied by before and after photos of a consumer endorser. At the bottom of the page is the following in small print text: "*Studies show average weight loss of 30.5 lbs in 6 months. Jennifer used SENSA® for 10 months with sensible diet. Jennifer is a SENSA® contest winner."]

*Id*.

22.    The following is from another print advertisement the FTC Action Defendants

employed:

[The background of the ad is a photograph of a thin and fit woman's torso with visible hip bones and visibly cut stomach muscles]

**NEED TO LOSE
30 POUNDS?**
Try SENSA® FREE!*

SENSA® is clinically proven to help you lose 30 lbs without dieting or spending all your time working out.** Just sprinkle on your food, eat and lose weight!

**GET A GYM BODY
WITHOUT GOING TO THE GYM**
* * *
CLINICALLY PROVEN. 100% SATISFACTION GUARANTEED.
* * *
*Product is Free to try for 30 days! Pay only a small shipping and handling fee. ** In one of the largest studies ever conducted on a non-prescription weight-loss system, 1436 people lost an average 30.5 pounds in just 6 months without changing their diet or exercise regime.

*Id*.

23.   The following is from another print advertisement the FTC Action Defendants

employed:

[The background of the ad is a photograph of a fit man's torso with visibly cut stomach, chest, and arm muscles, along with an inset photograph of a plate with a hamburger and French fries and two Sensa packages.]

**NEW**
Get in Shape with SENSA® FOR MEN

*Id*.

24.   The following is from an advertisement employed by the FTC Action Defendants

on the website www.trysensa.com:

Do You Want to Lose Weight, But Hate Dieting?
Join the Sensa Weight-Loss Revolution!
Michelle lost 40 pounds

Results not typical. Individual results may vary.

\* \* \*

TOP TEN REASONS TO TRY SENSA
1. It's NOT a diet
2. There are no stimulants, fat blockers or side effects
3. You can still eat all of your favorite foods (life's too short to deprive yourself of the things you love)
4. You don't have to spend money on bland, pre-packaged meals
5. The patent-pending technology is based on 25 years of scientific research
6. It's proven effective in one of the largest clinical weight-loss studies
7. Average weight loss is 30.5 pounds!
8. It's as easy to use as salt & pepper. Just sprinkle it on … and watch the weight come off.
9. You'll have 30 DAYS to try Sensa, and your satisfaction is GUARANTEED.
10. You can try it FREE.\*

\* \* \*

## NO OTHER WEIGHT-LOSS PRODUCT HAS SUCH EXTRAORDINARY CLINICAL RESULTS.

Over the course of 25 years, Sensa creator Dr. Alan Hirsch has conducted ongoing research on the effects of smell and taste on eating habits, ultimately leading him to spearhead one of the largest studies ever conducted on weight loss. Over a 6 month period, 1,436 women and men sprinkled scented, flavorless "Tastant" crystals on everything they ate. Participants were instructed not to change their existing diet or exercise program.

The 1,436 people in the treatment group who completed the program **lost an average of 30.5 pounds** — nearly 15% of their total body weight. Those in the control group lost only 2 pounds, on average.

This was followed by a double-blind, placebo-controlled study conducted by an independent laboratory, in which participants lost 27.5 pounds and about 14% of their body mass, on average. Participants were instructed not to change their existing diet or exercise program. Those in the control group gained half a pound, on average.

**Sensa was proven effective in one of the largest clinical studies ever performed on a non-prescription weight-loss product.**

*Id*.

25.     The following is from another print advertisement the FTC Action Defendants employed:

WENDY LOST 125 LBS* . . .

And Wendy is not alone. SENSA® was tested in one of the largest weight-loss studies of its kind ever conducted. Over 1,400 men and women who sprinkled SENSA® on their food for 6 months, lost an average of 30.5 lbs. And participants were told not to change anything about their current diet or exercise habits. . . .

[In small print: *SENSA® advocates a healthy lifestyle with regular exercise and portion control. Study shows 30.5 lbs average weight loss in 6 months. Compensated for excellent results. Wendy used SENSA® for 36 months with exercise and sensible diet.]

*Id*.

26.     In numerous instances, consumer endorsers of Sensa were offered the possibility of monetary compensation and other incentives, such as a free trip or appearing on television, for providing their endorsement. For example, the FTC Action Defendants ran numerous promotions in which they offered consumers $1000 or $5000 and other incentives, such as trips to Los Angeles or the chance to be on television, to enter contests, such as "Be Our Next Sensa Success Story," "Sensa Weight Loss Contest: Your Chance to be on TV!" and "The Sensa Weight-Loss Challenge," by sending in their endorsement, including "before" and "after" pictures. Numerous consumer endorsers of Sensa were compensated hundreds or thousands of dollars for their endorsement. In numerous instances, Defendants did not disclose these incentives, or did not disclose them adequately, in the advertisements in which such endorsements appeared.

**Faulty Studies Relied Upon in the FTC Action Defendants' Sensa Advertisements**

27.     The FTC Action Defendants represented that clinical studies conducted on Sensa prove that it causes an average weight loss of 30 pounds in six months. FTC Action Defendant

Hirsch conducted two purported weight-loss studies on Sensa and an allegedly independent lab, Best American Toxicology Testing Services, LLC ("BATTS"), conducted a third.

28.     The first study FTC Action Defendant Hirsch conducted on Sensa (Gallant-Shean, M., Hirsch, A.R., *Use of Tastants to Facilitate Weight Loss*) ("Hirsch 1") purportedly was a six-month study with 108 test subjects (92 who completed the study), compared to a purported control group of 100 persons.

29.     FTC Action Defendant Hirsch reported the results of Hirsch 1 in an abstract printed and distributed by The Association for Chemoreception Sciences at its 25th Annual Meeting (April 9-13, 2003). The distributed abstract states that the 92 completers lost an average of 5.6 pounds over six months, while the control group gained an average of 1.1 pounds.

30.     Hirsch filed four separate patent applications discussing Hirsch 1 with the United States Patent and Trademark Office (2002 and 2009) that also report that the 92 completers lost an average of 5.6 pounds over six months, while the control group gained an average of 1.1 pounds. Two patents issued in 2012 report the same data.

31.     The FTC Action Defendants stated in promotional material that Hirsch 1 shows that the 92 completers lost an average of 33.6 pounds in six months.

32.     Hirsch 1 was an open-label study, which means it was not blinded because the researchers and the subjects knew what treatment was being administered; it also was not randomized or placebo-controlled; there was no intent-to-treat analysis of the subjects who dropped out of the study; the subjects self-reported their weights; the subjects' diet and exercise were not monitored; and the underlying data are unavailable for verification.

33.     The second study Hirsch conducted on Sensa (Hirsch, A.R., *Use of Gustatory Stimuli to Facilitate Weight Loss*) ("Hirsch 2") purportedly was a six-month study with 2437 enrolled test subjects (1436 who completed the study), compared to a purported control group of 100 persons. The FTC Action Defendants stated in advertising and promotional material that Hirsch 2 shows that the 1436 completers lost an average of 30.5 pounds over six months, and the control group lost an average of two pounds.

34.     Hirsch 2 was an open-label study, which means it was not blinded because the researchers and the subjects knew what treatment was being administered; it also was not randomized or placebo-controlled; the subjects self-reported their weight; the test subjects were encouraged to diet and exercise; the subjects' diet and exercise were not monitored; and the underlying data are unavailable for verification.

35.     The third study on Sensa, by BATTS (*Efficacy Determination of Weight Loss Through Use of Crystal Tastants*) ("BATTS study"), purportedly was a six-month study conducted by an independent lab with 46 test subjects and 32 control subjects who completed the study. The FTC Action Defendants stated in advertising and promotional material that the 46 test subjects lost an average of 27.5 pounds over six months, while the control group gained an average of .34 of a pound. The FTC Action Corporate Defendants funded the BATTS study and participated in or exercised control over the design, conduct, and report of the study.

36.     The BATTS study was not adequately randomized; five test subjects (JA, LC, MB, MIC, and MS) were duplicates; some test subjects did not lose the weight reported in the data; there was no intent-to-treat analysis of the subjects who dropped out of the study, including five reported and seventeen unreported subjects; and the subjects' diet and exercise were not

monitored. In addition, on one or more occasions, BATTS or its contractors sent the subjects'

purported monthly weight data to the FTC Action Corporate Defendants and a third party in

advance of weighing the subjects. Moreover, owners of BATTS or their family members

appeared as endorsers in Sensa advertising.

**The FTC Action**

37.     Seeking to prevent the FTC Action Defendants from further using the misleading

advertisements and the faulty studies set forth above, the FTC filed an action (the FTC Action)

against the FTC Action Defendants on January 7, 2014 in a matter styled *Federal Trade*

*Commission v. Sensa Products, LLC et al.*, in the United States District Court for the Northern

District of Illinois, Eastern Division, Case No. 1:14-cv-00072.

38.     The FTC Action alleged, among other things, various violations of the Federal

Trade Commission Act, 15 U.S.C. § 41 *et seq*. ("FTC Act"), including unfair and deceptive acts

and practices, as well as false advertising in violation of the FTC Act.

39.     In Count I, the FTC Action alleged that the FTC Action Defendants, through use

of the above-referenced advertising materials, employed false and unsubstantiated efficacy

claims.  The FTC specifically alleged that the following FTC Action Defendants representations

were false or were not substantiated at the time the representations were made: (a) Sensa causes

substantial weight loss without dieting or exercise, averaging 30 pounds in six months; and (b)

Sensa enables users to lose substantial weight without ever feeling hungry.

40.     In Count II, the FTC Action alleged that the FTC Action Defendants employed

false proof claims.  Specifically, the following claims were alleged to be deceptive and to be

instances of false advertising: (a) Sensa is clinically proven to cause substantial weight loss

without dieting or exercise, averaging 30 pounds in six months; and (b) A clinical study of more than 1400 people proves that Sensa causes users to lose an average of 30.5 pounds in six month, without changing their diets or exercise routines.

41.     In Count III, the FTC Action alleged that the FTC Action Defendants failed to disclose material connections with consumer endorsers.  The FTC Action Defendants failed to disclose or disclose adequately that certain of the consumers appearing in their advertisements were offered incentives, such as possible monetary compensation, free trips, or television appearances, to provide an endorsement, or had been compensated in connection with their endorsement. These facts would have been material to consumers in deciding whether to purchase Sensa.  The FTC Action Defendants' failure to make these disclosures constituted false advertising and deceptive practices.

42.     In Count IV, the FTC Action alleged that the FTC Action Defendants falsely claimed that a study upon which its marketing materials relied was an independent clinical study. This claim was false because the FTC Action Corporate Defendants funded the study and participated in or exercised control over the design, conduct, and report of the study.  The false claim about the independent nature of the study constitutes false advertising and deception.

43.     In Count V, the FTC Action alleged that the FTC Action Defendants used unsubstantiated endorsement claims from FTC Action Defendant Hirsch.  Hirsch, acting as an expert endorser, represented that (a) Sensa causes substantial weight loss without dieting or exercise, averaging 30 pounds in six months; (b) Sensa enables users to lose substantial weight without ever feeling hungry; (c) Sensa is clinically proven to cause substantial weight loss without dieting or exercise, averaging 30 pounds in six months; and (d) A clinical study of more

than 1400 people proves that Sensa causes users to lose an average of 30.5 pounds in six month,

without changing their diets or exercise routines.  The FTC Action alleges that Hirsch did not

possess and rely upon a reasonable basis for any of these representations. Moreover, Hirsch did

not exercise his purported expertise in the field of weight loss in the form of an examination or

testing of Sensa and its purported scientific proof that was at least as extensive as an examination

or testing that an expert in that field would normally conduct, in order to support the conclusions

presented in his endorsements.  These actions again constituted deceptive practices and false

advertising.

44.     The FTC Action also alleged that consumers were being harmed as a result of the

false advertising and deceptive practices in which the FTC Action Defendants were engaging.

The FTC alleged that an injunction was merited to prevent harm to the public interest and further

consumer injury.  The FTC also alleged that the FTC Action Defendants were unjustly enriched

as a result of their unlawful practices.

45.     On information and belief, all of the allegations that the FTC made in the FTC

Action Complaint are true.

**The FTC Consent Order**

46.     On January 8, 2014, the day after the FTC Action was filed, the FTC and the FTC

Action Defendants filed with the Court a Stipulated Final Judgment and Order for Permanent

Injunction and Other Equitable Relief (the "FTC Order," a copy of which is attached hereto as

**Exhibit C** and is incorporated by reference).

47.     The FTC Order, under its terms, is binding upon of the FTC Action Defendants "and

their officers, agents, servants, representatives, employees, and all other persons or entities in active

concert or participation with them, who receive actual notice of this Order by personal service or otherwise."  FTC Order, ¶ 7.

48.    The FTC Order prohibits weight-loss claims concerning the FTC Action Defendant's Sensa-marked products.  Specifically, the FTC Order states as follows:

**IT IS ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Weight-Loss Program, in or affecting commerce, are hereby permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product or program name, endorsement, depiction, or illustration, any representation that such product or program:

> A. Causes or helps cause weight loss or any specific amount of weight loss;

> B. Causes or helps cause rapid weight loss; or

> C. Causes or helps cause substantial weight loss;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of at least two adequate and well-controlled human clinical studies of the Covered Product or of an Essentially Equivalent Product, or of the Covered Weight-Loss Program or of an Essentially Equivalent Weight-Loss Program, conducted by different researchers, independently of each other, that conform to acceptable designs and protocols and whose results, when considered in light of the entire body of relevant and reliable scientific evidence, are sufficient to substantiate that the representation is true. Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product or Essentially Equivalent Weight-Loss Program, as applicable.

FTC Order at 8.

49.     The FTC Order prohibits other health-related claims as well.  Specifically, the

FTC Order states as follows:

> **IT IS FURTHER ORDERED** that Defendants, directly or through any
> corporation, partnership, subsidiary, division, trade name, or other device, and
> their officers, agents, servants, representatives, employees, and all persons or
> entities in active concert or participation with them who receive actual notice of
> this Order, by personal service or otherwise, in connection with the
> manufacturing, labeling, advertising, promotion, offering for sale, sale, or
> distribution of any Covered Product or Covered Weight-Loss Program, in or
> affecting commerce, are hereby permanently restrained and enjoined from
> making, or assisting others in making, directly or by implication, including
> through the use of a product or program name, endorsement, depiction, or
> illustration, any representation, other than representations covered under Section I
> of this Order, about the health benefits, performance, or efficacy of such product
> or program, unless the representation is non-misleading, and, at the time of
> making such representation, Defendants possess and rely upon competent and
> reliable scientific evidence that is sufficient in quality and quantity based on
> standards generally accepted in the relevant scientific fields, when considered in
> light of the entire body of relevant and reliable scientific evidence, to substantiate
> that the representation is true. For purposes of this Section, competent and reliable
> scientific evidence means tests, analyses, research, or studies that have been
> conducted and evaluated in an objective manner by qualified persons and are
> generally accepted in the profession to yield accurate and reliable results.

*Id*. at 9–10.

50.     The FTC Order specifically defines "Covered Product" as "any dietary

supplement, food, or drug, including, but not limited to, Sensa." *Id*., ¶ 8.

51.     The FTC Order specifically defines "Covered Weight-Loss Program" to mean

"any weight-loss program that includes: (a) Sensa or (b) any other Covered Product sold or

distributed by any Defendant and purported, designed, or intended to cause or assist in causing

weight loss. Covered Weight-Loss Program, as defined above, may include, among other things,

a device or behavioral intervention." *Id*., ¶ 9.

52.     The FTC Order defines "Sensa" to mean "the Sensa flavored tastants or any other substantially similar product purported, designed, or intended to promote sensory-specific satiety."  *Id*., ¶ 18.

53.     The FTC Order defines "adequate and well-controlled human clinical study" to mean a "human clinical study that is randomized, adequately controlled, and conducted by persons qualified by training and experience to conduct such a study. For a Covered Product, such study shall be placebo controlled and double blind. For a Covered Weight-Loss Program, such study shall be placebo controlled and double blind as to any component that is a Covered Product and has been purported, designed, or intended to cause or assist in causing weight loss. *Provided, however,* that any study of a conventional food need not be placebo controlled or double blind if placebo control or blinding cannot be effectively implemented given the nature of the intervention. For the purposes of this proviso, 'conventional food' does not include Sensa or any dietary supplement. Defendants shall have the burden of proving that placebo control or blinding cannot be effectively implemented."  *Id*., ¶ 4.

54.     The FTC Order prohibits specific representations regarding tests or studies.  It states as follows:

> **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Weight-Loss Program, in or affecting commerce, are hereby permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product or program name or endorsement:

       A. The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

       B. That the benefits of such product or program are scientifically proven.

*Id*. at 10.

55.     The FTC Order prohibits expert endorsements that do not rely on reliable

scientific substantiation.  Specifically, the FTC Order states:

> **IT IS FURTHER ORDERED** that Defendant Hirsch, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and his agents, servants, employees, and all persons or entities in active concert or participation with him who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Weight-Loss Program, in or affecting commerce, are hereby permanently restrained and enjoined from making, directly or by implication, any representations as an expert endorser, including, but not limited to, the representations covered by Sections I–III above, unless he possesses and relies upon:
>
>     A. Competent and reliable scientific evidence required for the particular representation, as set forth above; and
>
>     B. An actual exercise of the represented expertise, in the form of an evaluation or test of such product or program conducted and evaluated in an objective manner and which is generally accepted in the relevant profession to yield accurate and reliable results.

*Id*. at 11–12.

56.     The FTC Order compels disclosure of material connections between endorsers

and the one making claims.  Specifically:

> **IT IS FURTHER ORDERED** that Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Covered Weight-Loss Program, in or affecting commerce, shall disclose, clearly and conspicuously, in close proximity to the triggering representation:

A. For any endorsement of such product or program, all material connections between the person providing the endorsement and the Defendants or any other person manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing such product or program; and

B. For any representation that any test or study supports any claims about the health benefits, performance, or efficacy of such product or program, all material connections with any person that has conducted, authored, or participated in the test or study.

*Id*. at 11.

57.     The FTC Order also imposed monetary judgment entered against the FTC Action Corporate Defendants in order to redress consumers.  The FTC Order entered judgment in the amount of $46,500,000, to be paid as follows: (1) $26,500,000.00 to be used for consumer redress for those that purchased the offending products from June 2008 through the date of the FTC Order, and (2) an additional $20,000,000.00 should the defendants fail to comply with certain terms of the FTC Order.

**FTC Action Defendants' Abandonment of the Sensa Mark**

58.     Following entry of the FTC Order, the FTC Action Corporate Defendants went out of business.

59.     The FTC Action Defendants abandoned the Sensa mark following entry of the FTC Order.

60.     On June 11, 2015, the US PTO cancelled the registration of the Sensa mark due to the FTC Action Defendants' abandonment of the mark.  *See* USPTO TESS Search Result for SENSA, printed on August 8, 2017, a copy of which is attached hereto as **Exhibit D** and is incorporated by reference.

**Plaintiff's Products and Acquisition of the Sensa Mark**

61.     Plaintiff is engaged in the business of acquiring and holding intellectual property rights, which it licenses to third party entities primarily for the manufacturing, marketing, selling, and distributing of dietary supplements and other health and fitness products throughout the United States.

62.     Plaintiff has no legal or corporate connection to any of the FTC Action Defendants.

63.     Plaintiff discovered that the Sensa mark was available following the PTO's declaration that the mark had been abandoned.

64.     On or about September 23, 2016, Plaintiff filed the trademark registration application, serial number 87975603, for SENSA.  A copy of the application is attached hereto as **Exhibit E** and incorporated by reference (hereinafter, "Plaintiff's Application").

65.     Plaintiff's Application was filed as Intent to Use the mark "SENSA" in International Class 005 for "Dietary food supplement with additives for weight loss and weight management; herbal supplements" and in International Class 030 for "Dry powder food flavoring."

66.     Plaintiff received a Federal Registration for SENSA® on September 19, 2017.  A copy of the Federal Registration for SENSA® is attached hereto as **Exhibit F**.

67.     Since May of 2017, Plaintiff has since used the SENSA®  mark in connection with products that are supported by credible scientific evidence.

68.     These products are formulations based upon scientific studies and other data and are formulated to be safe and effective.  Plaintiff has invested substantial sums to assure that its intended use of the SENSA® mark will engender and build goodwill by allowing it to be used

only in connection with products are manufactured to very high standards so that these products meet or exceed the quality and other characteristics of the compounds identified in the scientific literature, which support the products' efficacy.

69.     Plaintiff's SENSA® products are the results of scientific studies and research substantiating the efficacy of Plaintiff's SENSA®-marked products.  These studies and research are vastly different from the faulty studies that led to the FTC Order being entered prohibiting the sale of the FTC Action Defendants' Sensa-marked products.  Plaintiff's claims are founded upon extensive studies and substantiation.

70.     Plaintiff has expended a great deal of time, effort, and money in preparation for its use of the SENSA® mark in connection with products that are supported by credible scientific evidence.

71.     Plaintiff first used the SENSA® mark in commerce on May 26, 2017.

72.     The products with which Plaintiff uses the SENSA® mark are sold in competition with products Defendant is apparently attempting to sell, as detailed below.

**Defendant SENERGY ENDEAVORS LTD., INC.'S SENSA Application and SENSA-marked Products**

73.     On or about June 29, 2017, Defendant filed a Notice of Opposition before the PTO's Trademark Trial and Appeal Board opposing Plaintiff's application to register SENSA in International Class 005 for "dietary food supplement with additives for weight loss and weight management; herbal supplements."  A copy of Defendant's Notice of Opposition is attached hereto as **Exhibit G** and incorporated by reference (hereinafter, the "Opposition").

74.     On or about June 29, 2017, the same day upon which it filed its Opposition, Defendant filed four applications with the PTO seeking registration of the following iterations of the SENSA mark:

a.      SENSA, serial number 87510424 (a copy of which is attached hereto as **Exhibit H** and incorporated herein by reference, hereinafter, "Defendant's SENSA Application"), International Class 005 for "Dietary and nutritional supplements used for weight loss" and "Dietary supplements in the nature of weight loss powders and pills";

b.      SENSA CHEWS, serial number 87510453 (a copy of which is attached hereto as **Exhibit I** and incorporated herein by reference, hereinafter, "Defendant's SENSA CHEW Application"), International Class 005 for "Dietary and nutritional supplements used for weight loss";

c.      SENSA WEIGHT LOSS SYSTEM, serial number 87510462 (a copy of which is attached hereto as **Exhibit J** and incorporated herein by reference, hereinafter, "Defendant's SENSA WEIGHT LOSS SYSTEM Application"), International Class 005 for "Dietary supplements in the nature of weight loss powders"; and

d.      SENSA QUENCH, serial number 87510444 (a copy of which is attached hereto as **Exhibit K** and incorporated herein by reference, hereinafter, "Defendant's SENSA QUENCH Application"), International Class 005 for "Dietary and nutritional supplements used for weight loss."

75.     All four of Defendant's trademark registration applications place Defendants' first use of the respective marks "[a]t least as early as [January 1, 2014]."

76.     Likewise, Defendant alleges in its Opposition that Defendant owns the four applications referenced above and that its use of the marks set forth therein predates Plaintiff's use of Plaintiff's SENSA mark.

77.     Defendant's various applications attach photos of the products that Defendant allegedly used in commerce since at least January 1, 2014.

78.     The photos attached to Defendant's various SENSA-related applications are photos of packaging of products identified as being manufactured, marketed and sold by the FTC Action Corporate Defendants, products that Defendant alleges to the USPTO that it owns, (despite the fact that the products expressly claim to belong to the FTC Defendants), and is currently selling in commerce, which packaging contains, among other things, the following representations:

      a.     "About SENSA® Creator[.]  Dr. Alan Hirsch, board certified neurologist, has conducted over 25 years of research regarding the impact of smell and taste on weight loss.  This research culminated in the creation of the SENSA® Weight-Loss System."

      b.     "Effective Results[.]  1,436 men and women lost an average of 30.5 pounds in just 6 months without changing their diet or exercise program."

      c.     "Simply shake it on everything you eat to help curb your appetite and lose weight without feeling deprived."

      d.     "ALAN HIRSCH, M.D."

      e.     "APPETITE CONTROL CHEWS"

      f.     "Weight Loss Program"

      g.     "WEIGHT LOSS SYSTEM"

      h.     "SPRINKLE. EAT. LOSE."

79.     These statements stem from the same studies that the FTC Action found to be misleading and unsubstantiated with competent scientific evidence.

**80.**     In fact, according to Defendant, it was making these claims on SENSA-related product beginning at the latest just days before entry of the very FTC Order that prohibits use of the SENSA mark in the manner in which Defendant is using it.

**Defendant SYNERGY ENDEAVORS LTD., INC.'s Sensa-Marked Products Contain False Statements**

81.     The products and claims Defendant has been using in connection with its claimed use of the SENSA marks are the same products that are subject to the FTC Order.

82.     The packaging for Defendant's products included in its various trademark registration applications attached to this Complaint have the identical look and appearance as the packaging at issue in the FTC Complaint, right down to the name of one of the FTC Action Corporate Defendants, Sensa Products, LLC, on the label of the packaging.

83.     The statements Defendant makes on its alleged SENSA-related products are based on the same faulty studies and science at issue in the FTC Complaint and that are subject to the FTC Order.

84.     The faulty study at issue in the FTC Complaint and the FTC Order involved a purported study involving 1,436 people who supposedly lost an average of 30.5 pounds in just 6 months.

85.     Defendant's SENSA-related products in the instant matter say the same thing: they claim that "1,436 men and women lost an average of 30.5 pounds in just 6 months without changing their diet or exercise program."

86.     The purported study on which these claims are based was an open-label study, which means it was not blinded because the researchers and the subjects knew what treatment was being administered; it also was not randomized or placebo-controlled; the subjects self-reported their weight; the test subjects were encouraged to diet and exercise; the subjects' diet and exercise were not monitored; and the underlying data are unavailable for verification.

87.     Such a study does not constitute competent and reliable scientific evidence upon which Defendant may make a weight-loss claim in its product under the FTC Order.

88.     The faulty research at issue in the FTC Complaint and FTC Order involved the work of Dr. Alan Hirsch and resulted from purportedly over 25 years of ongoing research.

89.     The claims on Defendant's SENSA products in the instant case also claim to be based on this same purported 25 years of research.

90.     Defendant's product packaging referenced in its various trademark applications represents, directly or indirectly, expressly or by implication, that these products cause substantial weight loss without changing diet or exercise routine, averaging 30.5 pounds in six months.

91.     These representations are false and were not substantiated at the time the representations were made.

**Defendant SYNERGY ENDEAVORS LTD., INC.'s Purported SENSA CHEWS Product Lack Adequate Substantiation for Reasons Independent from the Issues Set Forth in the FTC Order**

92.     Defendant's claims regarding the efficacy of its purported SENSA CHEWS product relies on a key ingredient, "Glucomannan (Konjac root)."

93.     Attached hereto as **Exhibit L** are images of Defendant's SENSA CHEWS products as currently listed for sale on Amazon.com.  The ingredients plainly list "Glucomannan (Konjac root)" on the back of the packaging and prominently state "with Konjac root" on the front of the package.

94.     Defendant's use of this ingredient as a basis for its appetite control claims are false and misleading, however, because only one specifically-processed type of glucomannan has been substantiated to assist with appetite control: fine grades of glucomannan sold under the "Propol®" trademark.

95.     Glucomannan is a dietary fiber derived from Konjac, a root vegetable that is eaten as a food in Asia.  Shimizu Chemical Corporation has developed a proprietary process for extracting and refining glucomannan from a specific species of Konjac root grown using proprietary, trade secret protected methods, to produce the highest-quality glucomannan available in the world.  Shimizu manufactures different grades of its refined glucomannan products for various purposes.  These grades include the highest and most refined grades sold under the "Propol®" trademark.  As a consequence of Shimizu's proprietary methodologies, Propol® has unique characteristics that contribute to weight loss, as well as other benefits, in humans when taken as directed.  However, there is no evidence that glucomannan manufactured by other companies which are derived from Konjac species other than the species discovered by Shimizu to have unique properties, have any effect on weight loss.  In fact, weight loss studies on other glucomannan products show that they are ineffective for weight loss.

96.     The effectiveness of any such fiber-based product for weight loss depends, in part, on both the amount and duration of its viscosity. The more gelatinous a mixture is, and the longer it sustains that gelatinousness, the more fat it is capable of trapping, and thus the greater its benefit to weight loss. Similarly, the more gelatinous a mixture, the greater the feeling of satiety it provides in the stomach.

97.     Shimizu's glucomannan is produced using proprietary knowledge including special growing conditions for the particular species of Konjac root, unique processes for extracting the glucomannan, and refining procedures that result in a high molecular weight and viscosity as comparted to other dietary fibers. At body temperature, Propol-A's viscosity exceeds 80,000 mPa.S,[1] and Propol-A maintains viscosity above approximately 75,000 mPa.S for at least 84 hours.

98.     Various clinical trials support these assertions.

99.     Attached hereto as **Exhibit M** are the results of a study specifically comparing the efficacy of the Sensa Products, LLC SENSA CHEWS glucomannan ingredient with the Propol® glucomannan.  As the results show, the SENSA CHEWS glucomannan is totally ineffective.

100.    None of the other ingredients listed in Defendant's purported SENSA CHEWS product have been found to assist with weight loss.  Accordingly, Defendant's marketing of this product as an appetite suppressant is wholly unsubstantiated by any viable scientific study. Marketing of this product thus constitutes false and deceptive advertising.

---

[1] Milli-Pascal seconds, a measurement of viscosity. If a fluid is placed between two plates with a distance of one meter, and one plate is pushed sideways with a shear stress of one pascal (a unit of pressure), and it moves at $x$ meters per second, then it has a viscosity of $x$ Pascal seconds. For example, water at 20 degrees Celsius (68 Fahrenheit) has a viscosity of 1.002 mPa.s, while motor oil has a viscosity of about 250 mPa.s.

**Whatever Defendant's Role, It Has Violated the Law and Damaged Plaintiff**

101.    As set forth above, Defendant is selling products bearing the same claims and based upon the same studies at issue in the FTC Action.  Defendant claims that its first use of the Sensa mark in connection with these products predates the FTC Action.  But at the time the FTC Action was filed, the FTC Action Defendants, not Defendant, owned the Sensa mark.  The FTC Action Defendants continued to own the Sensa mark until the mark was abandoned on June 11, 2015.

102.    Plaintiff is, accordingly, unsure of the basis upon which Defendant places its claim to the Sensa-related marks.  Defendant could not have legally been using the marks on January 1, 2014, unless it expressly acquired that right from the FTC Action Defendants, who owned the registered, Sensa-related marks at that time.  In order for Defendant's asserted right to the Sensa-marks to make any sense, Defendant must be acting under one of three scenarios: (1) the FTC Action Defendants are illegally using the Defendant as a shell company to sell products precluded by the FTC, (2) Defendant is illegally attempting to liquidate the products that the FTC Action Defendants could no longer sell pursuant to the FTC Order, or (3) Defendant is wholly unrelated to the FTC Action Defendants and is wrongfully using Plaintiff's mark, and the FTC Defendants' company name, to sell counterfeit product.

103.    No matter which of the three scenarios apply, Defendant is not entitled to use the SENSA® mark as it has allegedly been doing, as such actions are in flagrant violation of federal and state law, and Defendant's actions are damaging Plaintiff.

104.    Under the first scenario, Plaintiff alleges on information and belief that Defendant is legally related to the FTC Action Defendants and is in fact controlled by them or related

parties.  Defendant is thus directly subject to the terms of the FTC Order that prohibits the FTC

Action Defendants and any related entities from selling any Sensa-related products without

adequate scientific substantiation and from selling products that make the advertising claims set

forth in the FTC Action Complaint.  The products reflected in the specimens submitted by

Defendant in support it its trademark applications each contain these unlawful product claims.

105.   Under this scenario, Defendant is engaged in false advertising, unfair competition,

and trademark infringement under the Lanham Act, common law unfair competition, common

law fraud, and violation of state Truth in Advertising Act statutes.  These actions harm and have

damaged Plaintiff because Plaintiff has worked to develop goodwill surrounding its use of the

SENSA® mark and Defendant's use of the mark in connection with its false claims, faulty

studies, and misrepresentations regarding substantiation will harm that goodwill.  The public will

not trust the SENSA® mark, which Plaintiff is now using in commerce.  Unlike Defendant,

Plaintiff has extensive scientific substantiation for the products concerning which it is using the

SENSA® mark.  Plaintiff has expended time, effort, and money in developing its products and in

using the SENSA® mark as a marketing tool to promote these products.  Defendants' actions

threaten to undermine all of Plaintiff's efforts and have harmed Plaintiff in an amount to be

proven at trial.

106.   Alternatively, Plaintiff alleges on information and belief that Defendant is a

distributor and/or liquidator of the FTC Action Defendants' Sensa-related products.  In either

scenario, Defendant does not own the right to any SENSA mark, such right being the property of

the product's owner and manufacturer, Sensa Products, LLC.  Defendant alleges that it was using

the Sensa mark as of January 1, 2014.   As a distributor, Defendant it is still governed by the

prohibitions in the FTC Order that disallow the selling of any products based on the

unsubstantiated claims and faulty studies set forth above.

107.    Under this scenario, Defendant is not the owner of any SENSA trademark, but is

still subject to all of the same claims set forth above and has damaged Plaintiff for the same

reasons.

108.    Alternatively, Plaintiff alleges on information and belief that Defendant is not

related in any way to the FTC Action Defendants and is instead producing counterfeit product

bearing the Sensa mark and the Sensa Products, LLC identification.  Under this scenario,

Defendant is committing fraud by selling counterfeit products that purport to belong to a third

party, and that purport to be protected by federal trademark registration.  As of January 1, 2014,

the date upon which Defendant asserts that it first used the Sensa mark in commerce, the FTC

Action Defendants, not Defendant, were the proper owners of the Sensa mark.  The FTC Action

Defendants subsequently abandoned their use of the marks, as the PTO found on June 11, 2015.

Plaintiff shortly thereafter applied to the PTO for registration of the SENSA® mark on an intent-

to-use basis, and in fact has used the mark in commerce beginning May 26, 2017.  At no time

during this period did Defendant have a legal basis for using the SENSA® mark.  It is thus either

making counterfeit product copying FTC Action Defendants' Sensa-related products or is

infringing on Plaintiff's rights to the mark by falsely designating its own products with the

SENSA® mark.

109.    Under this scenario, Defendant is engaged in trademark infringement, unfair

competition, and false designation under the Lanham Act, and intentional interference with

Plaintiff's current and prospective economic relations.  Defendant's actions have harmed

Plaintiff.   Defendant's false designation of Plaintiff's mark has harmed the goodwill Plaintiff

has developed in its use of the SENSA® mark.   Defendant's actions confuse Plaintiff's future

customers who would otherwise be interested in purchasing Plaintiff's SENSA®-bearing

products into thinking that Plaintiff's products are based on the same faulty studies at issue in the

FTC Action.

110.   In addition to damages, under all three scenarios Plaintiff is entitled to an

injunction enjoining Defendant from using the SENSA® mark and from selling any of the

products set forth in its opposition filing to Plaintiff's application for registration of the

SENSA® mark.

111.   In addition, under all three scenarios, even absent the FTC Order and even

ignoring the issue of right to use the SENSA® mark, Defendant's advertising for its purported

SENSA CHEWS product constitutes false advertising under the Lanham Act because its claim

based on the ingredient glucomannan is not based on competent or reliable scientific evidence.

As set forth above, only one company has developed a method for processing glucomannan in a

way that has been scientifically shown to assist with appetite control and weight loss, which

refined glucomannan is sold under the Propol® mark.   As Defendant's purported SENSA

CHEWS product does not contain this type of glucomannan, its packaging claims are

unsubstantiated.

112.   Defendant's false and misleading representations are willful.   Defendant had

actual knowledge of the FTC Order entered against the FTC Action Defendants regarding Sensa

or at the very least knew that the Sensa-marked products could no longer be sold based on the

faulty substantiation claims upon which those products relied.

## FIRST CLAIM FOR RELIEF
### (False Advertising in violation of Lanham Act 15 U.S.C. § 1125(a))

113.    Plaintiff realleges paragraphs 1 through 112 of this Complaint as if set forth in full herein.

114.    On information and belief, Defendant is either in privity with the FTC Action Defendants, is a distributor of products at issue in the FTC Action, or is a counterfeiter of products previously manufactured and sold by the FTC Action Defendants.

115.    To the extent Defendant seeks to claim the FTC Action Defendants' products as its own, Defendant has made and distributed in interstate commerce advertisements that contain false and misleading statements of fact regarding its products.  Regardless, by Defendant's own admission, it has distributed in interstate commerce advertisements that contain false and misleading statements of fact regarding products it sells.  These advertisements contain actual misstatements and/or misleading statements or failures to disclose, specifically the statements that (1) Defendant's SENSA-marked products cause substantial weight loss without changing diet or exercise routine, (2) that the products have been shown via a study involving 1,436 people to cause an average of 30.5 pounds of weight loss in six months, and (3) that they are based on 25 years of viable research conducted by Dr. Alan Hirsch.  In addition, Defendant's purported SENSA CHEWS product falsely bases efficacy claims on the use of glucomannan.

116.    These statements actually deceive, or have a tendency to deceive, a substantial segment of Defendant's customers and potential customers.

117.    This deception is material in that concerns and inherent quality or characteristic of Defendant's SENSA-marked products and is likely to influence the purchasing decisions of Defendant's customers.

118.    Defendant has also falsely represented on its product packaging that it has federally registered trademarks with the USPTO, which representation is false.

119.    Defendant's false and misleading advertising statements and omissions injure both consumers and Plaintiff.

120.    Defendant's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

121.    Defendant has caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation and goodwill, for which there is no adequate remedy at law.  Plaintiff is therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendant, its agents, employees, representatives and all persons acting in concert with Defendant from engaging in future acts of false advertising and ordering removal of all of Defendant's false advertisements.

122.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendant's acts.

123.    Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendant the gains, profits and advantages that Defendant has obtained as a result of Defendant's acts in violation of 15 U.S.C. § 1125(a) and each instance of such violations. Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendant has obtained by reason of Defendant's acts.

124.     Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this action. Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.  Defendant had actual knowledge of the FTC Order entered against the FTC Action Defendants regarding Sensa or at the very least knew that the claims made in the marketing of the FTC Action Defendants' Sensa packaging was invalid.

125.     Whether Defendant is in privity with the FTC Action Defendants or is a distributor of the FTC Action Defendant's Sensa-marked goods, as an independent basis for a claim of false advertising under the Lanham Act, Defendant's marketing for its purported SENSA CHEWS product is misleading because it is relying on false claims of appetite control when it contains no ingredient that has been scientifically shown to provide such results.  There is only one form of glucomannan that has been shown to provide this, and Defendant is not using it.  The "appetite control" and "weight loss" claims made in connection with SENSA CHEWS is therefore false advertising under the Lanham Act and Plaintiff is entitled to recover damages pursuant to 15 U.S.C. § 1117.

126.     Defendant's violations were willful and entitle Plaintiff to punitive damages and attorneys fees.

### SECOND CLAIM FOR RELIEF
### (False Designation of Origin in violation of Lanham Act 15 U.S.C. § 1125(a)) or Use of Counterfeit Mark in violation of Lanham Act 15 U.S.C. § 1114

127.     Plaintiff realleges paragraphs 1 through 126 of this Complaint as if set forth in full herein.

128. Alternatively, if Defendant does not have privity with the FTC Action Defendants or knowledge of the injunction against the sale of their Sensa-related products, then on information and belief, Defendant is either selling counterfeit product or falsely designating that it is the owner of a registered SENSA trademark.

129. Defendant claims that it first used the SENSA mark on or before January 1, 2014. But at that time, the FTC Action Defendants still owned the rights to the SENSA mark. Not until June 11, 2015 did the USPTO declare the mark to be abandoned. Plaintiff then acquired right to use the mark and has been using the mark in commerce since May of 2017. At no time relevant to this Complaint did Defendant ever have a valid claim to the SENSA® mark. In claiming, both on its product packaging and in its filings with the USPTO attempting to register the name Sensa with regard to its purported SENSA-related products, Defendant is thus misrepresenting the nature, characteristics, qualities, and/or geographic origin of its own SENSA-marked goods. Such false claims are compounded by the fact that Defendant, to the extent is has sales of products bearing a SENSA® trademark, has falsely claimed that it has a registered trademark, when it does not.

130. As a competitor to Defendant, Plaintiff believes that it has been and is likely to continue being damaged by Defendant's actions in an amount to be proven at trial.

131. Alternatively, Defendant is merely manufacturing and selling counterfeit product bearing counterfeit marks, attempting to pass its products off as products previously manufactured and sold by Sensa Products, LLC, which if in fact marketed and sold by Sensa Products, LLC, would be illegal and in violation of the FTC Order.

132.    Defendant's actions are likely to cause confusion because consumers may think they are buying the original SENSA-marked products promulgated by the FTC Action Defendants, or may think that they are buying Plaintiff's SENSA®-marked products, when in fact they are buying counterfeit versions of these products.

133.    Defendant knew that its use of counterfeit product and/or marks was likely to cause confusion, mistake, or deceive.  Defendant's deception has harmed Plaintiff.

134.    Defendants violations were willful.

135.    Plaintiff is entitled to damages, including but not limited to statutory damages, treble damages, the costs of this action, attorney's fees, and Defendant's profits as set forth in 15 U.S.C. § 1117(c) as a result of its being harmed by Defendant's deception.

**THIRD CLAIM FOR RELIEF**
**(Trademark Infringement in violation of Lanham Act 15 U.S.C. § 1114)**

136.    Plaintiff reincorporates paragraphs 1 through 135 of this Complaint as if set forth fully herein.

137.    Plaintiff has a valid, protectable trademark.  It has rights to use the SENSA® mark, as set forth above.

138.    To the extent Defendant ever had a right to use the SENSA mark, Plaintiff's current right to the mark is superior to Defendant's right to use the mark, if any.  Plaintiff acquired the right to use the SENSA® mark after it had been abandoned.  Defendant has never manufactured or sold any product affiliating any Sensa-mark with the company Synergy Endeavors Ltd., Inc.  Nor has Defendant ever had a registered mark for the word SENSA with the USPTO.

139.    Plaintiff owns SENSA as a trademark.  It registered the mark on an intent-to-use

basis on September 23, 2016.  Plaintiff has used the mark in commerce as of May 26, 2017.

140.    Defendant claims that it is using the marks "SENSA," "SENSA CHEWS,"

"SENSA QUENCH," and "SENSA WEIGHT LOSS SYSTEM" in commerce.  Defendant

asserts that it is currently selling products bearing these marks.

141.    The purported products with which Defendant is using the marks are marketed as

appetite suppressants and weight loss products.

142.    Defendant's use of these marks is similar to the SENSA® mark that Plaintiff is

currently using on its products.

143.    Defendant is using these marks without the consent of Plaintiff.

144.    Plaintiff's products are also marketed as weight loss and appetite control products.

145.    Defendant's purported products contain the word SENSA, and as such, are

confusingly similar to Plaintiff's SENSA® mark.

146.    Defendant is using the SENSA mark in a manner that is likely to cause confusion

among ordinary consumers as to the source, sponsorship, affiliation, or approval of the products

on which it is found.

147.    Consumers are likely to be confused into thinking that Plaintiff's SENSA®

products are the same SENSA products that were based on false advertising and faulty studies as

set forth above.  Consumers are also likely to be confused in considering whether to purchase

Plaintiff's products, which *are* supported by valid scientific studies.  Consumers may be

confused into thinking that Plaintiff's products are based on the same faulty studies that led to

the FTC Order and caused the FTC Action Defendants to no longer be able to market products

under the Sensa mark and which led them to eventually go out of business and abandon the mark.

148.    Defendant's infringement of Plaintiff's mark has damaged Plaintiff.

149.    Plaintiff is entitled to recover (1) Defendant's profits, (2) Plaintiff's damages, (3) and the costs of this action.

150.    Moreover, on information and belief, Defendant's infringement is willful. Defendant is aware of the abandonment of the original SENSA marks and is aware of the reasons surrounding the injunction against sale of the products originally bearing those marks.  Yet Defendant is offering its own products, (that appear to be identical products to those that have been discredited by the court in the FTC Action), bearing the product company name of Sensa Products, LLC and purporting to have federal registration of the word SENSA.  Plaintiff is entitled to treble damages as a result of Defendant's willful infringement.

### FOURTH CLAIM FOR RELIEF
### (Unfair Competition Under the Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531 *et seq.*)

151.    Plaintiff realleges paragraphs 1 through 150 of this Complaint as if set forth in full herein.

152.    Regardless of whether Defendant is in privity with the FTC Action Defendants or is a distributor of the products at issue in that action as alleged above, Defendants' actions, among other things: (1) cause likelihood of confusion as to affiliation, connection, or association with, or certification by another because Defendant is relying on false claims and other misleading statements in marketing its products; (2) misrepresent that it has reliable scientific

support for its products, when it does not have such support; (3) misrepresent that it has federally

registered trademarks using the SENSA name, when in fact it does not.

153.     Alternatively, on information and belief, Defendant has engaged in selling

counterfeit products and/or products that improperly bear the SENSA® mark, when Defendant is

not entitled to use it.  These actions constitute passing off of its goods for that of another and are

likely to cause confusion as to the source, sponsorship, approval, or certification of its products.

154.     Under all of these scenarios, Defendant has violated the Uniform Deceptive Trade

Practices Act, and Plaintiff is entitled to the remedies set forth in Section 2533 of the Act,

including, but not limited to, injunctive and monetary relief, including treble damages.

155.     Moreover, inasmuch as Defendant's actions were willful, Plaintiff is entitled to its

attorneys fees.

### FIFTH CLAIM FOR RELIEF
### (Intentional Interference)

156.     Plaintiff realleges paragraphs 1 through 155 of this Complaint as if set forth in full

herein.

157.     Defendant's misrepresentations set forth in its product marketing and its misuse

of the SENSA® mark has intentionally interfered with Plaintiff's prospective business

opportunities.  Defendant's actions harm the goodwill Plaintiff has developed with respect to the

SENSA® mark and confuses Plaintiff's potential customers by offering products for sale that are

not based on adequate scientific studies.

158.     Plaintiff has reasonable probability of business opportunities to sell its SENSA®-

marked products to consumers.  Plaintiff has already been selling these products to consumers

since May of 2017.

159.    Plaintiff's products are sold in the same market as Defendant's purported products.  Defendant's actions directly harm Plaintiff.

160.    Defendant's actions have damaged Plaintiff in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Injunctive Relief)

161.    Plaintiff realleges paragraphs 1 through 160 of this Complaint as if set forth in full herein.

162.    Defendant has engaged in deceptive trade practices in violation of the Lanham Act and various state laws.

163.    Defendant's acts will continue to deceive the public, including consumers and retailers, unless the Court enjoins Defendant from advertising, marketing, packaging, labeling, or purporting to sell the SENSA-marked products as currently depicted in Defendant's trademark applications attached to this Complaint.

164.    Defendant should also be enjoined from making appetite control and weight loss claims for its SENSA CHEWS product based on its inclusion of glucomannan as Defendant's claim is not supported by adequate scientific studies.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Relief)

165.    Plaintiff realleges paragraphs 1 through 164 of this Complaint as if set forth in full herein.

166.    Based on the allegations contained in this Complaint, there is a present and actual need for a judicial declaration.

167.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff is entitled to and hereby moves the Court for a judgment declaring that:

a.    Defendant's advertising concerning its purported SENSA-marked products is illegal, confusing, likely to confuse or otherwise misleading.

b.    Plaintiff has a legally protectable interest in preventing Defendant's advertising.

c.    Plaintiff has suffered real harm as a result of Defendant's advertising.

d.    Defendant's advertising is likely to confuse the public into believing that its SENSA-marked products have the direct benefits Defendant claims it has on the products' packaging.

e.    Defendant should pay Plaintiff its attorneys' fees and costs incurred in prosecuting this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A permanent injunction against Defendant, its officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them from directly or indirectly advertising, marketing, packaging, labeling, or selling any product based on the claims currently set forth on the products referenced in Defendant's trademark applications attached hereto;

B.      An order requiring Defendant to immediately remove all SENSA-marked products and advertisements from all marketing channels in which it currently promotes its SENSA-marked products;

C.      Judgment on all claims for the damages suffered by Plaintiff as a result of Defendant's Lanham Act violations, in an amount to be determined at trial;

D.      Judgment directing an accounting by Defendant of its profits by reason of its false advertising;

E.      Judgment for relief trebling Plaintiff's recovery pursuant to 15 U.S.C. § 1117, as a result of Defendant's willful and intentional violations;

F.      Judgment for relief awarding Plaintiff's reasonable attorneys fees in this action, pursuant to 15 U.S.C. § 1117;

G.      Judgment awarding Defendant's profits to Plaintiff, and awarding damages sustained by the Plaintiff and the costs of the action;

H.      Judgment for punitive damages as a result of Defendant's outrageous conduct and willful and intentional violations;

I.      Judgment on all claims awarding Plaintiff's costs and attorney's fees in this action;

J.      Declaratory relief as requested;

K.      Injunctive Relief as requested; and

L.      Such other relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

DALTON & ASSOCIATES, P.A.

*/s/ Andrew C. Dalton*
Andrew C. Dalton, Esq. ID 5878
Michael C. Dalton, Esq. ID 6272
Bartholomew J. Dalton, Esq. ID 0808
DALTON & ASSOCIATES, P.A.
Cool Spring Meeting House
1106 West 10th Street
Wilmington, DE  19806
ATTORNEYS FOR PLAINTIFF

PRICE PARKINSON & KERR, PLLC

David R. Parkinson Esq. (*pro hac motion pending upon acceptance*)
Mark J. Williams, Esq. (*pro hac motion pending upon acceptance*)
Price Parkinson & Kerr, PLLC
5742 West Harold Gatty Drive
Suite 101
Salt Lake City, Utah 84116
ATTORNEYS FOR PLAINTIFF (*pro hac motions pending upon acceptance*)

DATED: 9/27/17